EVELYN SMITH, APPELLANT, v.
JOHN L. DEWEY, M.D., APPELLEE.
335 N.W.2d 530

Filed June 17, 1983. No. 82-096.

Michael G. Goodman of Matthews, Cannon & Riedmann, P.C., for appellant.

John R. Douglas of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

HASTINGS, J.

The plaintiff, Evelyn Smith, filed a second amended petition in the District Court alleging malpractice

on the part of John L. Dewey, a practicing physician in Omaha and the defendant in this action. The defendant's demurrer to that petition was sustained, and the plaintiff apparently chose to stand on her pleading. Accordingly, the action was ordered dismissed.

The plaintiff on appeal assigns as error, generally, the finding of the trial court that the action was barred by the 10-year statute of repose applicable in professional negligence cases, Neb. Rev. Stat. § 25-222 (Reissue 1979); and, secondly, that the court erred in relying upon Neb. Rev. Stat. § 27-504 (Reissue 1979), the physician-patient privilege, to deny the plaintiff's motion to require the defendant to produce certain of his records relating to the treatment of other patients. Because we sustain the action of the District Court in dismissing the cause of action, we need not address this last-claimed error.

The plaintiff alleged that commencing in 1965 the defendant began a series of treatments of plaintiff's allergy, which included the injection of X-ray radiation particles into the plaintiff's chest, which continued during the years 1966, 1967, and 1970. She further alleged that she was last seen and examined by the defendant on March 2, 1972, and that during a routine physical examination conducted by another physician in November of 1972, it was discovered that she was suffering from a malignancy requiring surgery, which resulted in damages to her. Although this amended petition was filed on January 4, 1982, her original petition was filed on October 15, 1981.

We should observe at the outset that any allegation in the petition of a causal connection between the treatments and the resulting cancer is at best vague. However, utilizing the rule that if, applying a liberal construction, a petition states a cause of action a demurrer should be overruled, we will continue with an examination of the principal issue in

this case. *Dixon v. Reconciliation, Inc.*, 206 Neb. 45, 291 N.W.2d 230 (1980).

Section 25-222 provides as follows: "Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further*, that in no event may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action."

The plaintiff alleged in part that her damages were proximately caused because the "defendant knew or should have known that the said experimental x-ray procedure inevitably would cause cancer," and the "defendant failed to obtain the informed consent of the plaintiff prior to the commencement of said x-ray treatments." As to those allegations, it is readily apparent on the face of the petition that both the failure to warn and the treatments themselves would date back, at the latest, to the year 1970, when the last treatments were given. Thus, alleged negligent acts causing plaintiff's harm, which occurred more than 10 years before bringing suit, form no basis for recovery. *Colton v. Dewey*, 212 Neb. 126, 321 N.W.2d 913 (1982).

The plaintiff again raises the claim that the 10-year statute of repose denies her right to access

to the courts guaranteed by article I, § 13, Constitution of Nebraska. This same objection was raised in *Colton v. Dewey, supra,* and answered by this court contrary to the position taken by the plaintiff, and is dispositive of that point.

The final assignment of error which requires discussion is concerned with plaintiff's allegation in her petition that the "defendant knew or should have known of the carcinogenic risk of the x-ray therapy and yet failed to warn the plaintiff at any time while plaintiff was under the defendant's care." Plaintiff argues that the defendant had a continuing duty to warn the plaintiff of the risk of the treatment she was receiving until she last saw her physician, which she claims was on March 2, 1972. Because she brought this action within 10 years of that date, she argues that the statute of repose does not apply. In support of that position she quotes in her brief the following language from *Colton*: " 'The difficulty with this argument is that Appellant would have whatever fiduciary relationship may exist between physician and patient extend beyond the duration of the physician-patient connection itself. We disagree; the wrongful act of which Appellant complains took place no later than when the course of treatment ended in 1965 [the year Appellant was last seen by the Appellee].' " Brief of Appellant at 9. The parenthetical statement is not supported by the record. Reference to the transcript in *Colton* discloses that in that petition it was alleged the "Plaintiff underwent . . . exposure to x-ray in . . . and April of 1965 . . . ." There was no reference to a date of last examination as is present in the instant case.

If we were to apply the date of "when the course of treatment ended" criterion of *Colton*, we would have to hold that such date fell sometime during the year 1970, and the statute of repose would be applicable. However, what the plaintiff is asking us to do, in effect, is to declare that there is a continuing obligation on the part of a physician to warn of the

consequences of prior treatment so long as the physician-patient relationship exists, and for 10 years thereafter.

In support of this argument plaintiff has cited many cases from other jurisdictions. Several of these cases are inapplicable, as they deal with a situation where a doctor has operated on the plaintiff patient and has negligently left a foreign object inside the patient. In such cases the rule regarding the running of the statute of limitations is that the statutory limitation period does not begin to run until the doctor-patient relationship ends. The rationale behind this rule is that in such cases two tortious acts occur. First, the doctor malpractices by leaving the foreign object inside the patient, and, secondly, the doctor malpractices by failing to detect the presence of the foreign object while the patient continues to be under the care of the doctor. See Annot., 70 A.L.R.3d 7 (1976), and the cases cited therein. Such facts are not present in this appeal and therefore these cases do not apply.

Plaintiff also cites authority for the proposition that the statute of limitations on medical malpractice claims does not begin to run until the doctor-patient relationship between the parties is terminated. See *Hundley v. St. Francis Hospital*, 161 Cal. App. 2d 800, 327 P.2d 131 (1958). While this does seem to be the rule in California, and has been adopted by other jurisdictions, we do not feel compelled to adopt it in this jurisdiction. Considering this rule of law in light of the Nebraska 10-year statute of repose, a patient could simply visit a doctor every 9½ years and thereby effectively preclude the statute from ever running. This is contrary to the intent of the Legislature, evidenced by the enactment of this limitation period, and we therefore refuse to adopt such a position.

There is also a third line of cases dealing with this issue. Under this line of cases the statute of limitations does not begin to run until the act complained

of, and any resulting subsequent treatment therefor, is completed. An example of this rule is found in *Williams v. Elias*, 140 Neb. 656, 1 N.W.2d 121 (1941).

The plaintiff in that case sustained certain injuries to his back. He was then examined by the defendant doctor. On the basis of that examination the defendant incorrectly diagnosed plaintiff's condition and treated him according to that diagnosis. Due to this incorrect diagnosis and subsequent treatment, plaintiff suffered further injuries to his back. At issue in that case was when the period of limitations began to run: at the date of diagnosis, which was arguably the point in time at which the malpractice occurred, or at the conclusion of the doctor's treatment of plaintiff's injuries. We held in that case that the statute of limitations did not commence to run until the treatment by the doctors of the *specific injuries* of that patient ended. We held in this fashion even though, at least arguably, it was the diagnosis and not the treatment given thereafter which was the act of malpractice.

The holding in *Williams v. Elias, supra,* was based upon decisions from other states, two of which were Ohio and Minnesota. Discussing the reasoning behind this rule, we stated: "The reason for the holdings as appear in the Ohio, Minnesota and other cases, cited in support thereof, is that it is just to the physician and surgeon that he may not be harassed by premature litigation instituted in order to save the right of the patient in the event there should be substantial malpractice. The physician and surgeon must have all reasonable time and opportunity to correct the evils which made the observation and treatment necessary and to correct the ordinary and usual mistakes incident to even skilled surgery. The doctrine announced in the foregoing cases is conducive to that mutual confidence which is highly essential in the relation between surgeon and patient. The treatment and employment should be considered as a whole, and if there occurred therein mal-

practice, the statute of limitations should begin to run *when the treatment ceased.* Especially is this true in a situation, such as presented in the instant case, where plaintiff's condition required treatment, rather than surgery." (Emphasis supplied.) 140 Neb. at 662-63, 1 N.W.2d at 124.

We find this reasoning and this rule to be controlling in the present case. We hold the statute of limitations on the plaintiff's claim began to run at the end of the treatment which plaintiff claims to have been malpractice.

Plaintiff's petition states that the treatments which she contends constituted acts of malpractice occurred in 1965, 1966, 1967, and 1970. These acts clearly occurred more than 10 years prior to the filing of this action. Any claim based solely on any one or all of these acts is time barred. Plaintiff also claims she was last examined by defendant on March 2, 1972. This date falls within the statutory limitation period. If the subsequent examination alleged in the petition was a followup to or a continuation of these previous treatments, under the rule from *Williams v. Elias, supra,* stated above, plaintiff's claim is timely. On the other hand, if this 1972 examination was unrelated to the prior X-ray treatments, then it would not be a continuation of the treatment complained of, and plaintiff's claim would be barred under the statute of limitations.

We believe that the burden is on the plaintiff to make such allegation in "ordinary and concise language." Neb. Rev. Stat. § 25-804 (Reissue 1979). This she has failed to do. The court should not be forced to speculate on the relationship of the alleged examination to the earlier treatments. The plaintiff's claim, on the face of her petition, was barred by the statute of repose. The judgment of the District Court was correct and is affirmed.

AFFIRMED.

WHITE, J., dissenting.

We submit that it is the majority that is neither

clear nor concise, but rather is strained and speculative.

The paragraph the majority holds is not in "ordinary and concise language" is as follows: "Plaintiff in 1965 was 41 years old, a resident of Nebraska and submitted to the care of the defendant John L. Dewey for the treatment of an allergy. In 1965, defendant John L. Dewey ordered and administered therapeutic x-ray treatments upon plaintiff for the purpose of alleviating or curing her allergy. The treatment included the injection of x-ray radiation particles into the plaintiff's chest from the front and rear. Plaintiff underwent three exposures to x-rays a year for the years, 1965, 1966 1967 and 1970. Plaintiff was last seen and examined by defendant on March 2, 1972." The language is, in fact, ordinary and concise. The defendant was engaged to treat an allergy. To suggest that the last treatment was, in fact, for another purpose is not supportable from any reasonable construction of the paragraph.

SHANAHAN, J., joins in this dissent.